# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### OWENSBORO DIVISION

CIVIL ACTION NO. 4:08CV-00031-JHM

DOLRUEDEE SUPPACHEEWA                                    PLAINTIFF

VS.

MADISONVILLE COMMUNITY COLLEGE,
KENTUCKY COMMUNITY AND TECHNICAL COLLEGE
SYSTEM, JUDITH RHOADS and RAY GILLASPIE                  DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Defendants, Madisonville Community
College, Kentucky Community and Technical College System, Judith Rhoads, and Ray Gillaspie,
for summary judgment [DN 39] and on a motion by Plaintiff, Dolruedee Suppacheewa, for oral
arguments [DN 46]. Fully briefed, these matters are ripe for decision.

## I.  STANDARD OF REVIEW

In order to grant a motion for summary judgment, the Court must find that the pleadings,
together with the depositions, interrogatories, and affidavits, establish that there is no genuine issue
of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.
The moving party bears the initial burden of specifying the basis for its motion and of identifying
that portion of the record which demonstrates the absence of a genuine issue of material fact.
Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the
non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for
trial. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving
party, the non-moving party is required to do more than simply show that there is some

"metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 586 (1986). Rule 56 requires the non-moving party to present "*specific facts* showing there is a *genuine* issue for trial." Fed. R. Civ. P. 56(e) (emphasis added). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. It is against this standard that the Court reviews the following facts.

## II. BACKGROUND

Plaintiff, Dolruedee Suppacheewa, a Buddhist, Thai, female, was hired as a Teaching and Learning Specialist by Defendant, Madisonville Community College, in July of 2004 under a Title III Grant Program. The Madisonville Community College is a college within the Kentucky Community and Technical College System ("KCTCS"). In April of 2004, Plaintiff applied for two grant funded positions at Madisonville Community College: Instructional Improvement Coordinator ("Teaching and Learning Specialist") and Instructional Media Technician ("Instructional Design Technician"), both of which were professional staff positions. Plaintiff interviewed with the search committee that included Jan Muto, Dawn Chumley, Linda Thomas, Greg Jewell, Dr. Deborah Cox, and David Schuermer and with the President of Madisonville Community College Dr. Judith Rhoads. The search committee recommended Plaintiff for employment and Dr. Rhoads hired her for the Teaching and Learning Specialist position in July of 2004. This position paid more than the Instructional Design Technician position for which she applied as well. Dr. Rhoads advised Plaintiff that the salary for the Teaching and Learning Specialist position was $41,000, and she accepted the position.

In July of 2004, Madisonville Community College hired Michelle Savage for the

Instructional Design Technician position. Initially, Savage reported to Plaintiff and Plaintiff reported to David Schuermer, Coordinator of Grants, Planning, and Effectiveness. After a few months, Dr. Deborah Cox, the Dean of Academic Affairs, began supervising both Plaintiff and Savage. In January of 2005, Madisonville Community College hired Craig Dixon as the Information Systems Program Developer, a full-time professional staff grant position. Dixon reported to David Shuermer In 2006, Savage left her employment with Madisonville Community College and her position was not filled. Cox decided to restructure the positions in the Title III Grant Program. Cox reassigned some of Savage's job duties to Plaintiff.

In August of 2006, Madisonville Community College selected Greg Jewell, a 22-year faculty member, as the Teaching and Learning Coordinator under the Grant Program. This position incorporated some of the duties that Plaintiff originally performed. Jewell also became Plaintiff's supervisor. Plaintiff continued to manage the Teaching Enhancement Center (TEC) and the student workers who were employed at the TEC and continued to assist faculty and staff using technology. Plaintiff's salary was neither increased or reduced, her title did not change, but her duties were restructured. Plaintiff continued to receive good performance evaluations.

In the fall of 2006, Plaintiff requested vacation leave from December 1, 2006, through January 10, 2007, during which time she was scheduled to travel to Thailand. Jewell approved Plaintiff's vacation leave. On November 20, 2006, she requested in advance sick leave for Tuesday, November 28, 2006, and Wednesday, November 29, 2006, to go to doctor's appointments. The sick leave was approved. On Monday, November 27, 2006, Jewell could not locate Plaintiff at the College. Jewell contacted a student worker in the TEC Center who informed him that Plaintiff had already left for vacation in Thailand. Plaintiff had not requested any type of leave on November 27,

2006, and was paid for working that day. Likewise, Plaintiff did not report to work on Thursday, November 30, 2006. On December 4, 2006, Plaintiff requested sick leave for November 30, 2006, and requested it be applied retroactively.

Plaintiff was scheduled to return from her vacation on January 10, 2007. Two days before her scheduled return, Plaintiff contacted May Wright, Human Resource Director, to inquire about securing six days of sick leave extending her return to work to January 18, 2007. Plaintiff requested this leave due to her father's medical condition. (Suppacheewa Jan. 8, 2007, E-mail.) Madisonville Community College officials denied her request for additional sick leave because of the issues surrounding her departure in late November. Plaintiff then inquired about Family and Medical Leave and requested to know why her sick leave with pay was denied. Wright e-mailed Plaintiff and informed her:

> Please understand that we realize your father is sick, *but* you do have an obligation to your job here.
>
> 1.     You were to have started your vacation on December 1, 2006. Your whereabouts on November 27th was questionable and the three sick days you took before your vacation are still not resolved and may also be leave without pay.
>
> 2.     You have missed the end of the fall semester and the beginning of the new semester.
>
> 3.     Number 6 under the Family/Medical Leave of Absence in the policy handbook states: "*In the event of a serious health condition of the employee or his/her child, spouse or parent, the employee must provide KCTCS with notice, as soon as practicable, of any needed time off, and a written doctor's certificate. The certification must include the date on which the health condition occurred, the probable duration of the condition, an estimate of the amount of time you need to be off work to care for the family member or for your own health condition, and confirmation that the nature of the condition warrants you to be away from work to care for yourself or your dependent.*"
>
> 4.     You have exhausted your vacation leave and now want to use sick time to be

paid for your absence.  Under the sick leave for staff employees in the policy handbook, it states that *"Excessive or unplanned absenteeism and tardiness are disruptive, and either violation may lead to disciplinary action, including termination of employment."*  We believe this request to be an abuse of the leave policy.

5.     Notice should have been given before January 8th when you were expected to return January 10th.

(Wright January 10, 2007, E-mail.)  Plaintiff did not provide any documentation and did not return to work until January 18, 2007.

Upon her return to work, a meeting was held between Plaintiff and Chief Business Affairs Officer Ray Gillaspie, May Wright, and Greg Jewell concerning Plaintiff's attendance at work on November 27-30, 2006.  When questioned by Gillaspie, Plaintiff stated that she left the country on December 1, 2006, around 11:00 a.m. from Evansville Airport and that she was "in and out" of the office on November 27, 2006.  (Plaintiff May 13 & 14, 2009, Deposition at 103-104, 147-148.)  At some point in the meeting, Gillaspie requested to see Plaintiff's plane ticket to Thailand.  Plaintiff then admitted that she had actually purchased her plane ticket in August of 2006 and departed the United States on November 24, 2006.  (Id. at 113-114.)  Plaintiff claimed that she was "in and out" of the office on November 27 by electronic mail.  (Id. at 104-105.)  Gillaspie and Wright testified that during the meeting Plaintiff admitted to having lied to them about her presence at Madisonville Community College on November 27, 2006.  Plaintiff denies having admitted to her superiors that she had lied, but instead she characterizes this as a miscommunication or misinterpretation.  (Id. at 112, 149-150.)  In her deposition, Plaintiff concedes that her initial statements to college officials was "not accurate," that she did not tell Jewell that she would not be at the office on November 27th, and that she did not actually see a doctor on November 28 and 29, 2006.  (Id. at 109, 148, 160.)

On January 19, 2007, Gillaspie suspended Plaintiff without pay for job abandonment,

falsifying payroll records, and dishonesty to supervisor and human resources department. (Gillaspie January 18, 2007, Letter.) On February 1, 2007, Judith L. Rhoads, President of Madisonville Community College, met with Plaintiff and presented her with a termination letter based upon these same grounds. (Rhoads February 1, 2007, Letter.) The letter further informed Plaintiff that she was entitled to a pre-termination hearing.

By letter dated February 6, 2007, Plaintiff through counsel requested a pre-termination hearing and indicated that Plaintiff would be filing an EEOC charge for gender, national origin, religion, and race discrimination against her during her tenure at the Madisonville Community College. Additionally, Plaintiff's counsel informed Dr. Rhoads that she believed Plaintiff had additional claims for defamation and Family and Medical Leave Act retaliation.

After receipt of the letter and after consultation KCTCS's head of personnel, Dr. Rhoads rescinded the termination by letter and invited Plaintiff back to work upon satisfaction of certain conditions. (Rhoads February 9, 2007, Letter.) Additionally, Plaintiff's suspension without pay was reversed to a suspension with pay for that time period with the exception of the four day period from November 27, 2006, through November 30, 2006. Furthermore, Dr. Rhoads informed Plaintiff that her absences from January 8, 2007, through January 17, 2007, may be counted as Family Medical Leave and be paid through accrued sick time upon the submission of valid medical information stating that her father was ill during her trip to Thailand. (Rhoads February 9, 2007, Letter.) On February 14, 2007, Plaintiff returned to work. Jewell resigned as Plaintiff's supervisor because, according to Jewell, Plaintiff's attorney threatened to name him as a defendant in a lawsuit. Dr. Cox again became Plaintiff's direct supervisor. Upon Plaintiff's submission of medical records

to Dr. Rhoads,[1] Madisonville Community College permitted Plaintiff to utilize her accrued paid sick leave for her absences from January 8 through January 17.

On March 13, 2008, Plaintiff filed this action against Madisonville Community College, Kentucky Community and Technical College, President Judith Rhoads, and Chief Business Affairs Officer Ray Gillaspie asserting claims of discrimination, hostile work environment, and retaliation under 42 U.S.C. § 1981; race, gender, national origin, and religious discrimination and retaliation under Title VII, 42 U.S.C. § 2000e, and the Kentucky Civil Rights Act, KRS § 344.010; retaliation under the Family and Medical Leave Act, 29 U.S.C. § 2601; and defamation. Defendants filed this motion for summary judgment arguing that (1) Plaintiff's § 1981 claim against state governmental units is not permitted; (2) Plaintiff failed to state a prima facie case in her claims of discrimination and retaliation under Title VII and the Kentucky Civil Rights Act; (3) Plaintiff failed to prove interference or retaliation under the Family and Medical Leave Act; and (4) Plaintiff's defamation claim is time barred. The Court considers these arguments in turn.

## III. DISCUSSION

### A. § 1981 Claim

The Plaintiff alleges that she was treated differently than other Caucasian employees, subjected to a hostile work environment on the basis of her race, and was retaliated against for complaining about her treatment on the basis of race in violation of 42 U.S.C. § 1981. A cause of action under 42 U.S.C. § 1983, not § 1981, is the "exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." Arendale v. City of Memphis, 519 F.3d

---

[1] Subsequent translation of the medical records submitted by Plaintiff reveal the only medical record for her father was a prescription for Kenacort-A 10mg/ml on December 12, 2006.

587, 598-599 (6th Cir. 2008). Because Madisonville Community College and Rhoads and Gillaspie in their official capacities are state governmental units, the Plaintiff's claim under § 1981 must be dismissed.

### B. Title VII and KRS Chapter 344 Discrimination Claim

Defendants argue that summary judgment on Plaintiff's claims of race, gender, national origin, and religious discrimination under Title VII, 42 U.S.C. § 2000e-2(a)(1), and the Kentucky Civil Rights Act ("KCRA"), KRS § 344.010, should be granted because Plaintiff has failed to state a prima facie case. In addition, Defendants contend that even if Plaintiff has stated a prima facie case, summary judgment is proper because Madisonville Community College has offered legitimate reasons for Plaintiff's suspension and Plaintiff has failed to show that those reasons are pretexts for unlawful discrimination.

### 1. Prima Facie Case

Defendants first argue that Plaintiff has failed to make out a prima facie case of discrimination under Title VII or KCRA. Claims for discrimination under KCRA are analyzed under the standards developed under Title VII of the Civil Rights Act of 1964. Bryson v. Regis Corp., 498 F.3d 561, 574 (6th Cir. 2007); Meyers v. Chapman Printing Co., Inc., 840 S.W.2d 814, 821 (Ky. 1992). Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to ... compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Where, as here, a plaintiff offers only indirect evidence of discrimination, she may establish a prima facie case under Title VII by showing: "1) [she] is a member of a protected class; 2) was qualified for the job; 3) [she] suffered an adverse employment

decision; and 4) was replaced by a person outside the protected class or treated differently than similarly non-protected employees." <u>Newman v. Federal Express Corp.</u>, 266 F.3d 401, 406 (6th Cir. 2001).

If a plaintiff satisfies this requirement, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973); <u>Martin v. Toledo Cardiology Consultants, Inc.</u>, 548 F.3d 405, 410-11 (6th Cir. 2008); <u>Daugherty v. Sajar Plastics, Inc.</u>, 544 F.3d 696, 703 (6th Cir. 2008). If the defendant articulates such a reason, the burden then shifts back to the plaintiff to show by a preponderance of the evidence that the proffered reason is pretextual. <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 143 (2000). This means that in order to withstand a motion for summary judgment a plaintiff must show that there is a triable issue of fact upon which a jury could reasonably find that more likely than not the employer's reason is a pretext for unlawful discrimination. <u>Manzer v. Diamond Shamrock Chems. Co.</u>, 29 F.3d 1078, 1083 (6th Cir.1994).

### a. Adverse Employment Action

Defendants argue that Plaintiff has not satisfied her prima facie case because she failed to present evidence that she was subjected to an adverse employment action. An "adverse employment action" is one that "affect[s] employment or alter[s] the conditions of the workplace." <u>Burlington Northern & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 62 (2006). Generally, it involves changes in the terms of employment, such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits," and usually "inflicts direct economic harm." <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 761- 762 (1998); <u>White v. Baxter Healthcare Corp.</u>, 533 F.3d 381, 402 (6th Cir. 2008). Such a change "must be more

disruptive than a mere inconvenience or an alteration of job responsibilities." <u>Hollins v. Atlantic Co.</u>, 188 F.3d 652, 662 (6th Cir.1999).

First, Plaintiff complains that she suffered an adverse employment action when she was required to assume the job responsibilities assigned to Michelle Savage in the summer of 2006. Additionally, Plaintiff alleges that she likewise suffered an adverse employment action when Greg Jewell was hired as Teaching and Learning Coordinator and Plaintiff was required to report to him rather than to Deborah Cox, Dean of Academic Affairs. The record reflects that in 2006, Michelle Savage resigned her position at Madisonville Community College. Deborah Cox, Dean of Academic Affairs, decided not to fill Savage's position, but instead to restructure the positions in the Grant Program. Plaintiff's responsibilities were restructured to cover some of the duties of Savage's vacant position. Some of Plaintiff's job duties were reassigned to Greg Jewell, a 22-year faculty member. Under this restructuring, Jewell continued to teach at the College and became the Teaching and Learning Coordinator under the Grant Program. Plaintiff lost no salary and no benefits. Plaintiff continued to supervise student workers at the TEC Center and continued to work on the technology side of improving faculty teaching. (Schuermer Dep. at 40-43.)

Plaintiff has failed to established that the changes in her job responsibilities and supervisor in August of 2006 resulted in any adverse employment action. According to the Sixth Circuit, "reassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions in employment discrimination claims." <u>Kocsis v. Multi-Care Mgmt., Inc.</u>, 97 F.3d 876, 885 (6th Cir.1996). The action "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." <u>Id.</u> at 886. It is undisputed that after the reassignment or alteration of job duties, Plaintiff's salary was unaffected, she did not lose any benefits, and she

continued to supervise student workers. Plaintiff has failed to sustain her burden of establishing a materially adverse employment action.

Second, Plaintiff complains that she suffered an adverse employment action because she was paid less than the salary set forth in the Title III Grant of $51,000 for her position. Plaintiff submits no contract or other authority to support her contention that the College was required to pay her $51,000. The record reflects that Plaintiff applied for a position at the College requesting a salary of $36,000, Madisonville Community College offered her the position of Teaching and Learning Specialist at a salary of $41,000, and she accepted that position. In fact, Plaintiff received one of the highest paid positions under the Grant Program. Contrary to Plaintiff's argument, payment of Plaintiff in accordance with the agreed upon terms of her employment does not constitute an adverse employment action.

Third, Plaintiff complains that she suffered an adverse employment action because she was placed in an office by Madisonville Community College that was determined by OSHA to be unsafe. Plaintiff testified that her office door could be locked from the outside creating the possibility that she could be locked inside her office. The record reflects that in Summer of 2006 Plaintiff's office was relocated to the TEC Center. Plaintiff received permission from her immediate supervisor to utilize a storage room for her office instead of the TEC Center as planned. (Gillaspie Dep. at 27-29.) Plaintiff filed a complaint with OSHA concerning the fact that her door could be locked from the outside. OSHA notified the College of the safety violation. Plaintiff testified that after she made it known that there was an issue with the deadbolt in that office, Defendants relocated her from that office to another workspace. (Suppacheewa May 13 &14, 2010 Dep. at 227.) Plaintiff has not articulated how the office condition or the College's response rises to a level of a materially adverse

employment action.

Fourth, Plaintiff complains that she suffered an adverse employment action because she was placed on suspension without pay beginning January 18, 2007; issued a pre-termination letter on February 1, 2007; and ultimately, received suspension without pay regarding her absences from November 27, 2006 through November 30, 2006. Contrary to Defendants' argument, the suspension without pay of Plaintiff, including the period for which Plaintiff received back pay, qualifies as an adverse employment action. "While *de minimis* employment actions and 'very temporary' actions are not materially adverse and, thus, not actionable under Title VII, Bowman, 220 F.3d at 462, those involving changes such as a termination or a suspension constitute adverse employment actions." Howington v. Quality Restaurant Concepts, Inc., 298 Fed. Appx. 436, 442 (6th Cir. Oct. 20, 2008)(citing Arendale, 519 F.3d at 603). Similarly, whether classified as termination or pre-termination suspension without pay, the period between February 1, 2007 and February 9, 2007, would likewise constitute a material adverse employment action despite the fact that she accepted reinstatement with back pay. "A termination [or suspension] and concomitant loss of income can constitute a material adverse action, even where the plaintiff later is reinstated with back pay." Mohammed v. Logistics, 2006 WL 2468280, *6 n. 2 (S.D. Ohio Aug. 24, 2006). See also White v. Burlington Northern & Santa Fe R. Co., 364 F.3d 789, 800-801 (6th Cir. 2004)(employee's thirty-seven day suspension without pay, followed by reinstatement with back pay, constituted an adverse employment action); Miller v. City of Canton, 319 Fed. Appx. 411 (6th Cir. April 3, 2009).

Fifth, Plaintiff contends that Dr. Rhoads refusal in March of 2007 to provide Plaintiff with a letter of reference so that she could pursue her doctorate constitutes an adverse employment action. Similarly, Plaintiff contends that Dr. Rhoads refusal in September of 2007 to provide employment

verification for the three year period ending in 2010 to the Department of Labor for her work Visa constitutes an adverse employment action. Plaintiff fails to articulate how these decision by Dr. Rhoads adversely affected her employment with Madisonville Community College.

Finally, Plaintiff argues that she suffered an adverse employment action when she was terminated effective September 30, 2008. By letter dated August 29, 2008, Dr. Rhoads notified Plaintiff that due to budget restrictions, the College had chosen to eliminate Plaintiff's position. The Court may not consider this termination. Plaintiff filed her Complaint in this matter in March 2008. Plaintiff was terminated effective September 30, 2008. Plaintiff never amended her Complaint to allege any conduct after March 2008 to support a claim for discrimination, hostile work environment, or retaliation. "A plaintiff may not amend [her] complaint through arguments in [her] brief in opposition to a motion for summary judgment." Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cir. 1996); Tucker v. Union of Needletrades, Indus., and Textile Employees, 407 F.3d 784, 788 (6th Cir.2005); Mitchell v. C & S Wholesale Grocers, Inc., 2010 WL 2735655, *4 (D.N.J. July 8, 2010); Kurtz v. Secretary of Army, 2009 WL 5066901, *5 (M.D. Tenn. Dec. 21, 2009). Plaintiff did not amend her complaint to allege an action based on the elimination of her position; therefore, the Court will not address the termination in determining whether an adverse employment action occurred.

Based on the reasons set forth above, the Court concludes that Plaintiff's suspension without pay qualifies as an adverse employment action.

**b. Similarly Situated**

Defendants argue that Plaintiff failed to demonstrate that similarly situated non-protected employees were treated more favorably. In a discrimination case, the Sixth Circuit has explained

that "[i]n order for . . . employees to be considered similarly-situated . . . the plaintiff must prove that all of the relevant aspects of [her] employment situation are 'nearly identical' to those of the [non-minority] employees who [she] alleges were treated more favorably." Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 802 (6th Cir. 1994). See also Knox v. Neaton Auto Prods. Mfg., Inc., 375 F.3d 451, 458 (6th Cir. 2004). "The protected plaintiff and non-protected employee do not have to have committed the same alleged misconduct to be comparable. Instead, they must 'have engaged in acts of comparable seriousness.'" Johnson-Romaker v. Kroger Ltd. P'ship One, 609 F. Supp. 2d 719, 730 (N.D. Ohio 2009) (quoting Wright v. Murray Guard, Inc., 455 F.3d 702, 710 (6th Cir. 2006)). See also Hollins v. Atlantic Co., Inc., 188 F.3d 652, 659 (6th Cir. 1999). Where an employee alleges discriminatory disciplinary action, the Court has further explained that "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992).

In response to the motion for summary judgment, Plaintiff identified three caucasion, male, non-Buddhist, and non-Thai employees, Craig Dixon, Greg Jewell, and Dr. Robert Warren, whom she alleges received more favorable treatment than she did. However, Plaintiff fails to articulate any misconduct by these employees. In fact, Plaintiff offers no examples of any other non-minority professional staff who engaged in conduct of comparable seriousness potentially warranting discipline, but who received a lesser sanction than the one Plaintiff herself received. See Arendale, 519 F.3d at 604; Colvin v. Veterans Admin. Medical Center, 2010 WL 2993998, *5 (6th Cir. July 26, 2010.) Because Plaintiff has not identified a similarly situated non-protected employee who

received more favorable treatment, Plaintiff has failed to satisfy the elements of her prima facie case of discrimination.

## 2. Legitimate, Non-Discriminatory Reason

Assuming that Plaintiff could establish a prima facie case of race, gender, national origin, and/or religious discrimination, Defendants have offered legitimate reasons for Plaintiff's suspension without pay. Defendants assert that the reason they placed Plaintiff on suspension without pay was for falsification of payroll records related to her absences from November 27 through November 30, 2006, and her dishonesty to college staff concerning those absences. Accordingly, Defendants have offered a legitimate, non-discriminatory explanation for their discipline of Plaintiff, thus destroying "'the legally mandatory inference of discrimination arising from the plaintiff's initial evidence.'" Manzer, 29 F.3d at 1082 (quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 255 n. 10 (1981)).

## 3. Pretext

In order to establish pretext, a plaintiff must show that the proffered reason (1) had no basis in fact; (2) did not actually motivate the adverse employment action; or (3) was insufficient to motivate that action. Manzer, 29 F.3d at 1084. Ultimately, to carry her burden in opposing summary judgment, Plaintiff must produce sufficient evidence from which a jury could reasonably reject Defendants' explanation of why they suspended her. Chen v. Dow Chemical Co., 580 F.3d 394, 400 (6th Cir. 2009). In an effort to establish pretext, Plaintiff repeatedly argues that her conduct did not justify suspension without pay or termination in February of 2007. Plaintiff represents that she worked remotely during the November 27 through November 30, 2006, time period and communicated to student workers and Jewell. Plaintiff maintains that due to the nature

of her job responsibilities, she had been permitted to work and supervise her students remotely in the past. Plaintiff contends that she did not "lie" to Gillaspie about when she left the country, but instead thought that Gillaspie had asked her the date her vacation began. Finally, Plaintiff argues that she did not falsify employment records.

"When an employer reasonably and honestly relies on particularized facts in making an employment decision, it is entitled to summary judgment on pretext even if its conclusion is later shown to be 'mistaken, foolish, trivial, or baseless.'" Byers v. Midwest Terminal, Inc., 2010 WL 3259734, *8 (W.D. Ky. Aug. 17, 2010)(quoting Chen, 580 F.3d at 401). This honest-belief rule requires an employer "'establish its reasonable reliance on the particularized facts that were before it at the time the decision was made.'" Id. (quoting Smith v. Chrysler Corp., 155 F.3d 799, 806-07 (6th Cir.1998)). However, "once the employer is able to point to the particularized facts that motivated its decision, the employee has the opportunity to produce 'proof to the contrary.'" Id. at 807; see also Clay v. United Parcel Service, Inc., 501 F.3d 695, 713-14 (6th Cir. 2007).

In the present case, Defendants have pointed to specific facts that they had at the time the decision was made to suspend Plaintiff without pay and to issue the termination letter which would justify their belief in the proffered non-discriminatory reason. In fact, Plaintiff's deposition testimony supports Defendants' claim that the College suspended Plaintiff for falsification of payroll records and dishonesty to her superiors. Plaintiff by her own testimony acknowledges that her initial statements to college officials were "not accurate." Plaintiff acknowledges that when questioned by Ray Gillaspie, she initially represented that she left the country on December 1, 2006, around 11:00 a.m. from Evansville Airport and she was "in and out" of the office on November 27, 2006. When Gillaspie requested to see Plaintiff's plane ticket, she admitted that she had actually purchased her

plane ticket in August of 2006 and departed the United States on November 24, 2006.  It is undisputed that Plaintiff missed two days of work without permission and she did not actually visit the doctor on the two days she requested sick leave.  Finally, in a February 7, 2007, letter to Madisonville Community College requesting a pre-termination hearing date, Plaintiff's former counsel represented that "[Plaintiff] took two days off that were not pre-approved, which she delayed acknowledging."  (Virginia O'Leary February 6, 2007, Letter at 2.)  Because Plaintiff has not produced evidence from which a reasonable fact finder could doubt that she was suspended for falsifying payroll records and dishonesty to her superiors, summary judgment is appropriate on her discrimination claims.

### C.  Retaliation

The Court next turns to Plaintiff's retaliation claim. Plaintiff claims that she was retaliated against for notifying Defendants of her discrimination claims in early February of 2007, for filing an EEOC Charge on April 27, 2007, and for filing a Complaint of discrimination on March 13, 2008. Claims for retaliation under KRS § 344.280 are analyzed under the standards developed under federal law. See Brooks v. Lexington-Fayette Urban Co. Housing Authority, 132 S.W.3d 790, 803 (Ky. 2004). Like Title VII intentional discrimination claims which lack direct evidence of discrimination, retaliation claims based on circumstantial evidence are analyzed under the McDonnell Douglas burden shifting framework. Chen, 580 F.3d at 402 (citing Ladd v. Grand Trunk W.R.R., Inc., 552 F.3d 495, 502 (6th Cir. 2009)); Blair v. Henry Filters, Inc., 505 F.3d 517, 524 (6th Cir. 2007).

The Court need not address whether Plaintiff established a prima facie case of retaliation, because she has failed to create a genuine issue of material fact as to pretext.  Ladd, 552 F.3d at 502.

As explained above, the evidence overwhelmingly supports Defendants' claim that the College suspended Plaintiff for falsification of payroll records and dishonesty to superiors. On this record, no reasonable jury could conclude otherwise. Chen, 580 F.3d at 402.

Furthermore, in as much as Plaintiff is arguing that her termination in September of 2008 is a result of retaliation, the Court declines to address the termination because Plaintiff never amended her Complaint to allege any conduct after March of 2008 to support her claim for retaliation. As discussed above, "[a] plaintiff may not amend [her] complaint through arguments in [her] brief in opposition to a motion for summary judgment." Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cir. 1996).

Accordingly, Defendants are entitled to summary judgment on Plaintiff's retaliation claim.

**D. Hostile Work Environment**

Defendants contend that Plaintiff failed to present sufficient evidence to sustain her hostile work environment claim. To prevail on a hostile work environment claim under Title VII, a plaintiff must show that: (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her gender, race, religion or national origin; (4) the harassment was so severe or pervasive that it created a hostile work environment; and (5) the employer knew or should have known of the harassment and failed to implement prompt and appropriate corrective action. See Hafford v. Seidner, 183 F.3d 506, 512 (6th Cir.1999); Blankenship v. Parke Care Ctrs., Inc., 123 F.3d 868, 872 (6th Cir. 1997). Harassment creates a hostile work environment when, based upon a totality of the circumstances, "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working

environment." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)(citation omitted); Williams v. General Motors Corp., 187 F.3d 553, 560 (6th Cir.1999). "The harassment must be both objective and subjectively severe or pervasive, meaning that Plaintiff must prove that a reasonable person would have found the work environment hostile or abusive and that Plaintiff personally perceived the environment to be abusive." McCloud v. Potter, 2010 WL 670147, *3 (W.D. Ky. Feb. 19, 2010)(citing Harris, 510 U.S. at 21-22). Whether an environment is hostile or abusive must be determined by considering "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23; Randolph v. Ohio Dep't of Youth Services, 453 F.3d 724, 733 (6th Cir. 2006).

In her deposition, Plaintiff identified a number of incidents that she classifies as harassment based upon race, gender, national origin, or religion. First, Plaintiff alleges that in 2004 David Shuermer, her supervisor, joked with her about Thai people living in trees and riding elephants. (Suppacheewa May 13-14, 2009 Dep. at 57-59.) Plaintiff admits that no other such comments were made to her by Shuermer regarding her nationality and she did not report the statements to anyone at the College. Second, Plaintiff alleges that David Shuermer asked her what religion she was and she told him Buddhist. (Id. at 61-64.) Shuermer then asked Plaintiff to explain Buddhism. After Plaintiff explained Buddhism briefly, no other questions were asked. Plaintiff did not complain to anyone at the College about this conversation. Third, Plaintiff claims that Craig Dixon, a co-worker, openly discussed his religion and "trashed others." (Id. at 65-69.) Plaintiff testified that on one occasion Dixon asked Plaintiff whether she believed in God and what she believed. Plaintiff did not report the comments Dixon made to anyone at the College. Finally, Plaintiff testified that Deborah

19

Cox, her supervisor, invited her to church to speak to people about the effects of the tsunami that hit Thailand. (Id. at 72-76.) Plaintiff attended the meeting and talked to members of the church about the impact of the tsunami on her family and the area. Plaintiff testified that it was not a formal educational session like she had been led to believe. Plaintiff did not report the incident to the College.

Accepting that these incidents occurred as Plaintiff describes them, they are not sufficiently pervasive, hostile or abusive to make the requisite showing of a hostile work environment. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Morris v. Oldham County Fiscal Court, 201 F.3d 784, 790 (6th Cir. 2000) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)). Thus, these isolated comments, questions, or incidents do not rise to an actionable level of harassment. Additionally, Plaintiff has not articulated how these incidents interfered with her work performance. Harris, 510 U.S. at 23. For these reasons, the Court concludes that Plaintiff has not presented sufficient evidence of a work environment permeated with discriminatory intimidation, ridicule, or insult that is so severe or pervasive as to alter the conditions of her employment or create an abusive working environment. Summary judgment on Plaintiff's hostile work environment claim is proper.

### E. Family and Medical Leave Act

The Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq., entitles qualifying employees up to twelve weeks of unpaid leave each year "to care for a spouse, child, or parent with a 'serious health condition' or if the employee has a 'serious health condition' that renders the employee unable to perform the functions of his job." Payne v. Goodman Mfg. Co., L.P., ___ F.

Supp. 2d ___, 2010 WL 2696520,*4 (E.D. Tenn. July 6, 2010)(citing 29 U.S.C. § 2612(a)(1)(C)-(D)). A "serious health condition" is a condition that requires inpatient care or continuing treatment by a health care provider. 29 C.F.R. § 825.114(a). "To invoke the protections of the FMLA, an employee must give his employer adequate notice and a qualifying reason for requesting FMLA leave." Payne, 2010 WL 2696520, *4 (citing Hoge v. Honda of Am. Mfg., Inc., 384 F.3d 238, 244 (6th Cir. 2004); Cavin v. Honda of Am. Mfg., 346 F.3d 713, 723-24 (6th Cir.2003)). It is unlawful for employers to either interfere with the rights afforded employees by the FMLA or retaliate against employees for exercising their FMLA rights. 29 U.S.C. § 2615(a). The Sixth Circuit recognizes two distinct theories for recovery under the FMLA: "(1) the 'entitlement' or 'interference' theory arising from 29 U.S.C. § 2615(a)(1) and (2) the 'retaliation' or 'discrimination' theory arising from 29 U.S.C. § 2615(a)(2)." Hoge v. Honda of Am. Mfg., Inc., 384 F.3d 238, 244 (6th Cir. 2004). Plaintiff filed suit under both theories.

*1. Interference Theory*

"Interference" or "entitlement" claims arise under 29 U.S.C. § 2615(a)(1), which provides, "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." To prevail on an entitlement claim, an employee must prove that: (1) she was an eligible employee, (2) the defendant was an employer as defined under the FMLA, (3) she was entitled to leave under the FMLA, (4) she gave the employer notice of her intention to take leave, and (5) the employer denied the employee FMLA benefits to which she was entitled. See Walton v. Ford Motor Co., 424 F.3d 481, 485 (6th Cir. 2005) (citing Cavin, 346 F.3d at 719). "Employees seeking relief under the entitlement theory must therefore establish that the employer's violation caused them harm." Edgar v. JAC Products, Inc.,

443 F.3d 501, 508 (6th Cir. 2006)(citing <u>Ragsdale v. Wolverine World Wide, Inc.</u>, 535 U.S. 81, 89 (2002)("[Section] 2617 provides no relief unless the employee has been prejudiced by the violation ....")).

Plaintiff maintains that Defendants interfered with her rights under the FMLA by denying her right to make application for FMLA leave. Plaintiff represents that she requested the paperwork to apply for FMLA leave and was denied the paperwork. Further, Plaintiff contends that she requested both sick and FMLA leave and both were denied. In support of her claim, Plaintiff cites the e-mail correspondence between Plaintiff and Human Resource Manager May Wright in January of 2007.

Viewing the facts in the light most favorable to Plaintiff, no reasonable trier of fact could conclude that Defendants interfered with Plaintiff's FMLA rights. In November of 2006, Plaintiff requested to utilize paid sick leave for November 28 and 29 in order to go to doctor's appointments. Plaintiff's request was granted. Additionally, in December of 2006, Plaintiff requested one additional paid sick day for November 30, 2006, to be applied retroactively. This request was initially granted as well. The record reflects that Plaintiff was scheduled to return from her vacation on January 10, 2007. On January 8, 2007, two days before her scheduled return, Plaintiff contacted Wright to inquire about securing six days of paid sick leave extending her return to work to January 18, 2007. Plaintiff requested this leave due to her father's medical condition. In one of the e-mails, Plaintiff communicated to Wright that her father was in the hospital. Plaintiff was advised that Madisonville Community College would not allow her to use her paid sick leave to extend her vacation because of the issues surrounding her departure in late November of 2006. She was informed that the six days would be considered leave without pay. Plaintiff then inquired about

Family and Medical Leave and requested to know why her sick leave with pay was denied. Wright

e-mailed Plaintiff, explained the reason for the denial of paid sick leave, and informed Plaintiff of

the requirements for taking leave under the Family and Medical Leave Act set forth in the policy

handbook.[2] (Wright January 10, 2007, E-mail at ¶ 3.)  Finally, in correspondence between Wright

and Connie Harralson in the payroll department, Wright informed Harralson that Plaintiff's absences

of January 10, 11, 12, 15, 16, and 17, 2007, would be classified as "Leave without Pay."  (Wright,

January 12, 2007, E-mail to Harralson.)  Ultimately, as discussed above, upon submission of the

requested medical records, Madisonville Community College permitted Plaintiff to utilize accrued

paid sick leave for her absences from January 8 through January 17.

Plaintiff has made no showing that she was denied a right to which she was entitled under

the FMLA.  She has failed to demonstrate that she was denied unpaid leave for the period January

10 through January 18, 2007.  In fact, the record reflects that Wright advised Plaintiff that paid sick

leave would not be approved under the College's sick leave policy for this time and the time missed

would be classified as "Leave without Pay."  Additionally, even if Plaintiff could demonstrate that

she was entitled to paid sick leave for the period in question under the College's sick leave policy,

Defendants' initial failure to pay does not violate the FMLA.  See, e.g., Hicks v. Leroy's Jewelers,

---

[2] The e-mail specifically stated:
Number 6 under the Family/Medical Leave of Absence in the policy handbook
states: "*In the event of a serious health condition of the employee or his/her child,
spouse or parent, the employee must provide KCTCS with notice, as soon as
practicable, of any needed time off, and a written doctor's certificate.  The
certification must include the date on which the health condition occurred, the
probable duration of the condition, an estimate of the amount of time you need to
be off work to care for the family member or for your own health condition, and
confirmation that the nature of the condition warrants you to be away from work
to care for yourself or your dependent.*"

<u>Inc.</u>, 225 F.3d 659, 2000 WL 1033029, *4 n. 6 (6th Cir. July 17, 2000).

Finally, even if Plaintiff could prove an FMLA violation, the FMLA provides no relief unless the plaintiff has been prejudiced by the violation. <u>Edgar</u>, 443 F.3d at 508 (citing <u>Ragsdale v. Wolverine World Wide, Inc.</u>, 535 U.S. at 89); <u>Harris v. Metropolitan Government of Nashville and Davidson County</u>, 594 F.3d 476, 484 (6th Cir. 2010); <u>Cavin</u>, 346 F.3d at 726; <u>see also</u> 29 U.S.C. § 2617(a)(1)(A)(i)(I) (employer liable for compensation and benefits lost "by reason of the violation"). In this case, Defendant outlined the necessary steps required to apply for leave under the Family and Medical Leave Act. Plaintiff does not allege that she tendered the required medical certification as indicated in the e-mail correspondence. Once Plaintiff submitted medical records, she actually received paid sick leave for the requested dates. Plaintiff has not identified any compensation or benefits lost, and thus no resulting harm.

For these reasons, the Court grants summary judgment in favor of Defendants on Plaintiff's FMLA interference theory claim.

### 2. *Retaliation Theory*

Plaintiff argues that the Defendants retaliated against her for exercising her FMLA rights. Plaintiff contends that she was terminated because Defendants refused to consider her leave request. "The issue in an FMLA retaliation claim is whether an employer retaliated or discriminated against an employee because the employee invoked her FMLA rights." <u>Brady v. Potter</u>, 476 F. Supp. 2d 745, 758 (N.D. Ohio 2007). The Sixth Circuit employs the burden-shifting approach from <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), for retaliation claims brought under the FMLA. "Hence, a plaintiff alleging discrimination and/or retaliation bears the initial burden to demonstrate the following prima facie elements: (1) she notified her employer of her intent to take

FMLA protected leave; (2) she suffered adverse employment action; and (3) there exists a causal connection between the plaintiff's exercise of her FMLA rights and the adverse employment action." Brady, 476 F. Supp.2d at 758(citing Edgar, 443 F.3d at 509). If a plaintiff satisfies this requirement, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. McDonnell Douglas, 411 U.S. at 802. If the defendant articulates such a reason, the burden then shifts back to the plaintiff to show by a preponderance of the evidence that the proffered reason is pretextual. Id.

Even assuming Plaintiff could satisfy the prima facie case, the Plaintiff's claim for retaliation under the FMLA fails for the same reason as articulated with respect to her Title VII claims. In the present case, Defendants have pointed to specific facts that they had at the time the decision was made to suspend Plaintiff without pay and to issue the termination letter which would justify their belief in the proffered non-discriminatory reasons of falsification of payroll records and dishonesty to her superiors. Plaintiff has not shown that the proffered reasons lacked a basis in fact, failed to motivate the Defendants' decisions, or were insufficient to motivate their decisions; she has only shown that she disagrees with them. Furthermore, in as much as Plaintiff is arguing that the elimination of her position in September of 2008, is a result of retaliation for her exercise of her FMLA rights, the Court declines to address her September 2008 termination because Plaintiff never amended her Complaint to allege any conduct after March of 2008 to support her claim for retaliation. "A plaintiff may not amend [her] complaint through arguments in [her] brief in opposition to a motion for summary judgment." Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cir. 1996).

For these reasons, the Court grants summary judgment in favor of Defendants on Plaintiff's

FMLA retaliation theory claim.

**F. Defamation**

Defendants seek dismissal of Plaintiff's defamation claim arguing that it is time-barred. Kentucky law requires defamation claims to be filed within one year of when the cause of action accrues.  See  KRS § 413.140(1)(d).  Generally "it is the publication of the alleged libelous matter that causes the defamation or injury thus commencing the running of the one year statute of limitations provided by KRS 413.140(1)(d)." Caslin v. Gen. Elec. Co., 608 S.W.2d 69, 70 (Ky. Ct. App. 1980).  In her Complaint, Plaintiff points to statements made in conjunction with the January and February 2007 investigation of Plaintiff's absences by Rhoads and Gillaspie.  With respect to these statements, the defamation claims are clearly barred by the one-year statute of limitations. Plaintiff's complaint was filed on March 13, 2008, more than one year after the publication of the alleged defamatory statements.

In response to the motion for summary judgment, Plaintiff argues that her defamation claim is not time-barred by the one-year statute of limitations in KRS § 413.140(1)(d) because Defendants continued to publish these defamatory statements both before and after February of 2007. Specifically, Plaintiff alleges that the same slanderous statements were made on October 29, 2008. In support of this argument, Plaintiff cites a December 2008, letter from the Kentucky Community and Technical College System Chancellor, Keith Bird, denying Plaintiff's Step 3 Appeal of the elimination of her position by the College in September of 2008.  Any alleged defamatory statements made by Rhoads, Gillaspie, or any other College official in October of 2008 have not been pled in this action.  Plaintiff never amended her Complaint to allege any conduct after March of 2008 to support a claim for defamation.  As discussed above, "[a] plaintiff may not amend [her] complaint

through arguments in [her] brief in opposition to a motion for summary judgment." <u>Shanahan v. City of Chicago</u>, 82 F.3d 776, 781 (7th Cir. 1996).

For these reasons, the Court finds that Plaintiff's defamation claim is barred by the one-year statute of limitations.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Defendants, Madisonville Community College, Kentucky Community and Technical College System, Judith Rhoads, and Ray Gillaspie, for summary judgment [DN 39] is **granted** and the motion by Plaintiff, Dolruedee Suppacheewa, for oral arguments [DN 46] is **denied**. Judgment will be entered consistent with this Opinion.

cc: counsel of record